IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA AMBROSE | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| GABAY ENT & ASSOCIATES, P.C.; | : | NO. 12-5453 |
| GABAY SCHWARTZ ENT & ASSOCIATES, | : | |
| P.C.; & GABAY, RAPHAEL, D.O., P.C. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM RE: DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

**Baylson, J.**                                                                                                   **August 15, 2013**

**I.   INTRODUCTION**

Plaintiff, Cynthia Ambrose, alleges that her former employers ("Defendants")[1] terminated her because she objected to wearing a name badge that contained a list of workplace rules under the heading "Our Ten Commandments." Plaintiff, who seeks relief for religious discrimination and retaliation, alleges that she told Defendants that wearing the badge offended her religious belief that the only Ten Commandments are those contained in the Bible. Defendants have moved to dismiss pursuant to Rule 12(b)(6) based on their contention that the name badge had no religious connotations. (ECF No. 20). Plaintiff's allegations, however, when considered in the light most favorable to her, show a sincere religious belief that was in conflict with Defendants' requirement that she wear the list of commandments. The Court will therefore DENY Defendants' motion, mindful as it is of the principle that:

---

[1] Defendants are Gabay Ent & Associates, P.C.; Gabay Schwartz Ent & Associates, P.C.; and Gabay, Raphael, D.O., P.C. According to Plaintiff, Defendants are "separate corporate entities with the Pennsylvania Secretary of State," but are "a single enterprise operated by the same management and prinicpals, and are organizations operating within the same physical space at the same location and with the same overlapping employees." 2d Am. Compl. ¶ 7.

> We are a religious people whose institutions presuppose a Supreme Being. We guarantee the freedom to worship as one chooses. We make room for as wide a variety of beliefs and creeds as the spiritual needs of man deem necessary. We sponsor an attitude . . . that shows no partiality to any one group and that lets each flourish according to the zeal of its adherents and the appeal of its dogma.

Zorach v. Clauson, 343 U.S. 306, 313 (1952).

## II. FACTUAL ALLEGATIONS

Plaintiff's Second Amended Complaint alleges the following facts: Plaintiff is a 51-year-old female and devout Roman Catholic. 2d Am. Compl. ¶¶ 10-12. She believes in the Holy Bible, regularly attends mass, and raises her children to be Catholics just as she herself was raised. Id. ¶¶ 11-12, 16. As a tenant of her Catholic faith, "Plaintiff only believes in one set of Ten Commandments—those laid out in the Holy Bible." Id. ¶ 17. Plaintiff practices her faith by "adher[ing] to the Ten Commandments . . . in her daily life." Id. ¶ 15.

For eight years, Plaintiff worked as a receptionist at Defendants' medical practice, during which time she routinely received significant praise for her work. Id. ¶¶ 18, 23. In April of 2011, Defendants provided Plaintiff with a new name badge. Id. ¶ 25. In contrast to previous name badges, the backside of the new badge contained a list of ten office rules under the words "Our Ten Commandments." Id. ¶¶ 26-27. Plaintiff, who was instructed to wear the new badge around her neck and/or chest, promptly objected to doing so on religious grounds. Id. ¶¶ 28-31. Plaintiff told management that wearing an "altered 10 commandments around her neck" offended her religious beliefs because they were not the Ten Commandments "proscribed by her religious Catholic faith." Id. ¶ 30. Since the list of commandments on the badge "directly contravene those Ten Commandments she follows as a tenant of her Roman Catholic faith," Plaintiff found it "sacrilegious" to personally wear them. Id. ¶¶ 29, 31. Plaintiff made clear, however, that "she had no objection to wearing the badge without references to 'the ten

2

commandments.'" Id. ¶ 30.  This was a reasonable request, Plaintiff claims, because "[t]here was absolutely no business purpose whatsoever . . . to have to wear a badge with itemized commandments on the back, as no client or patient could see the back of Plaintiff's badge." Id. ¶ 35.

After voicing her objections, Defendants gave Plaintiff a disciplinary notice for "Failure to Comply with new policy and State Law[2] in an unprofessional fashion," and threatened her with termination if she refused to wear the new badge.  Id. ¶ 34.  "Out [of] fear for her job, Plaintiff compromised her own religious beliefs and wore the badge on the bottom of her shirt as opposed to around her neck."  Id. ¶ 37.  Plaintiff, however, continued to voice her belief that "an accommodation for her was exceedingly easy."  Id.  Plaintiff notes that she "was certainly willing to wear the rules of her employer" without the reference to the Ten Commandments.  Id. ¶ 39.  Further, "if Defendants merely wanted to remind [her] of its new policies or rules, Plaintiff would have gladly placed this information in a non-visible area in her workspace so that she would see it each day."  Id. ¶ 35.

Plaintiff was treated "very harshly" by Defendants for continuing to voice her objections to the new badge.  Id. ¶ 40.  On May 20, 2011, less than two months after raising her initial objection, Plaintiff was fired.  Id. ¶¶ 25, 40.  Although Plaintiff "was told that she was terminated from Defendants for rescheduling some patients," she claims that she had done this routinely without issue in the past.  Id. ¶ 41.

### III. PROCEDURAL HISTORY

On September 24, 2012, Plaintiff initiated this action by filing a Complaint that she subsequently amended on December 3, 2012.  After Defendants moved to dismiss the Amended

---

[2] According to Plaintiff, the relevant state law (The Health Care Facilities Act, P.L. 130, No. 48) "only requires health care professionals to wear a badge with photo identification, not to wear a badge with any sort of message on the back." Id. ¶ 23.

Complaint on December 17, 2012, (ECF No. 13), the Court gave Plaintiff leave to amend her Amended Complaint "to clarify the religious belief that is implicated by Defendants' actions." (ECF No. 18). Specifically, the Court asked for more specificity as to "how or why wearing the badge dictated by Defendants was offensive to her religious beliefs." Plaintiff thereupon filed a Second Amended Complaint on February 19, 2013, which seeks relief for religious discrimination and retaliation under both Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 951 et seq.[3] (ECF No. 19). On March 5, Defendants once again moved to dismiss. (ECF No. 20). The motion, which has been briefed by the parties, is now ripe for decision.

## IV.   LEGAL STANDARD[4]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While all factual allegations must be accepted as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), the Court need not accept legal conclusions, Iqbal, 556 U.S. at 678. A court must thus distinguish factual allegations from legal conclusions and determine if the factual allegations make out a "plausible claim for relief" for every legal claim asserted. Id. at 679.

## V.   ANALYSIS

Defendants have moved to dismiss this action on the sole grounds that Plaintiff's objection to wearing the badge was a "personal preference" that is not entitled to statutory protection because, *in their view*, the badge had "absolutely nothing to do with religion." Def's Br. at 6. In advancing this argument, Defendants state that they are not questioning the *sincerity*

---

[3] Since the elements of employment discrimination claims under the PHRA closely track the elements of Title VII claims, the Court will limit its analysis in this opinion to Plaintiff's Title VII claims. See Fichter v. AMG Res. Corp., --- F. App'x ---, 2013 WL 2501968, at *2 (3d Cir. 2013) (stating that parallel claims under Title VII and PHRA are "analyzed using the same framework").

[4] The Court has subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367.

of Plaintiff's belief that the badge has religious connotations; they are, instead, questioning the *validity* of this belief.  The Supreme Court has long made clear, however, that it is "not within the judicial ken" to determine the validity of religious belief.  Hernandez v. Comm'r, 490 U.S. 680, 699 (1989).  Under the very limited inquiry that courts can make into the religious nature of belief, the Court finds—for the reasons set forth below—that Plaintiff's revised complaint plausibly alleges that being forced to wear Defendants' ten commandments violated a sincerely held belief that is religious within Plaintiff's own scheme of things.

A.   **Religious Discrimination Claim**

An employee may assert two theories of religious discrimination under Title VII: "failure to accommodate" and "disparate treatment."  Abramson v. William Paterson College of N.J., 260 F.3d 265, 281 (3d Cir. 2001).  Plaintiff's claim here is based on the "failure to accommodate" theory.[5]  To establish a prima facie case under this theory, Plaintiff must show that "(1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement."  Webb v. City of Philadelphia, 562 F.3d 256, 259 (3d Cir. 2009).  Defendants concede that Plaintiff has set forth the latter two elements of this claim.  The only element in dispute, therefore, is whether Plaintiff has plausibly alleged that the name badge requirement conflicted with "a sincere religious belief."

The Supreme Court has long made clear that "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."  Hernandez, 490 U.S. at 699.  The Court has thus

---

[5] As the Third Circuit has explained, "42 U.S.C. § 2000e(j) creates the 'failure to accommodate' theory by including 'all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.'"  Abramson, 260 F.3d at 281 n.12.

stated in no uncertain terms that "the resolution of [what is a religious belief] is *not to turn upon a judicial perception of the particular belief or practice in question*." Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 714 (1981) (emphasis added). Courts "are not free to reject beliefs because they consider them 'incomprehensible,'" United States v. Seeger, 380 U.S. 163, 185 (1965), because "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others," Thomas, 450 U.S. at 714.[6]

Since courts lack the competence to be "arbiters of scriptural interpretation," id. at 716, a court's inquiry into whether a belief is "religious" is limited to determining whether the belief is (1) "sincerely held" and (2) religious within the plaintiff's "own scheme of things," Welsh v. United States, 398 U.S. 333, 339 (1970) (quoting Seeger, 398 U.S. at 185)).[7] Since Defendants state that they "do not contest the sincerity of Plaintiff's religious beliefs,"[8] Def's Rep. Br. at 2, the only question at issue is whether Plaintiff's belief is religious in her "own scheme of things."

---

[6] Although the Supreme Court has long recognized the lack of judicial authority to question the validity of religious belief in the First Amendment context, the Court does not appear to have addressed the definition of religious belief under Title VII. The Third Circuit and other lower federal courts, however, have applied First Amendment principles to the Title VII context by focusing on the sincerity with which a religious belief is held, rather than its validity. See Webb, 562 F.3d at 259 (indicating that sincerity is the standard under Title VII for determining if a belief is religious); E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 56 (1st Cir. 2002) ("Religious beliefs protected by Title VII need not be 'acceptable, logical, consistent, or comprehensible to others . . . .'" (quoting Thomas; 450 U.S. at 714)); Redmond v. GAF Corp., 574 F.2d 897, 900 (7th Cir. 1978) ("[T]o restrict [Title VII] to those practices which are mandated or prohibited by a tenet of the religion, would involve the court in determining not only what are the tenets of a particular religion, which by itself perhaps would not be beyond the province of the court, but would frequently require the courts to decide whether a particular practice is or is not required by the tenets of the religion. We find such a judicial determination to be irreconcilable with the warning issued by the Supreme Court in Fowler v. Rhode Island, 345 U.S. 67, 70 (1953), '(I)t is no business of courts to say . . . what is a religious practice or activity . . . .'" (footnote omitted)); Bailey v. Associated Press, No. 01-4562, 2003 WL 22232967, *7 (S.D.N.Y. Sept. 29, 2003) ("Under Title VII, courts exercise restraint in determining whether a belief is 'religious.'"); see also Shrum v. City of Coweta, Okla. , 449 F.3d 1132, 1143 (10th Cir. 2006) ("The religious accommodation requirements of Title VII extend beyond the dictates of the Free Exercise Clause.").

[7] Although Welsh sets forth the definition of religious belief under the First Amendment, the Equal Employment Opportunity Commission (EEOC) and lower federal courts have applied the same standard to Title VII. 29 C.F.R. § 1605.1; Union Independiente, 279 F.3d at 56; Redmond, 574 F.2d at 901 n.12; Sistrunk v. Camden County Workforce Inv. Bd., No. 05-1506, 2007 WL 1175701, at *3 (D.N.J. Apr. 18, 2007).

[8] Even if Defendants did contest the sincerity of Plaintiff's belief, this would not provide a viable basis to challenge Plaintiff's claims at the pleadings stage. See Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984) ("[A]ssessing a claimant's sincerity of belief demands a full exposition of facts . . . . A more cursory evaluation raises the spectre that the sincerity issue was decided by reference to the factfinder's perception of what a religion should resemble.").

Defendants argue that requiring employees to wear the name badge cannot conflict with a religious belief because the badge has "absolutely nothing to do with religion." Def's Br. at 6. Defendants base this argument on the following three premises. First, Defendants contend that the term "Our Ten Commandments" was used in the "vernacular sense." Id. at 7. This is important, Defendants reason, because Title VII does not "require employers to sanitize all communications to avoid any mention of common touchstones of a society that originated in the Judeo-Christian heritage." Id. at 8 n.2. Under Defendants' reasoning, their requirement that Plaintiff wear a badge with the words "Our Ten Commandments" was no different than an employer "calling an employee 'angel,' describing a dessert as 'sinful,' or referencing another common use of the term 10 commandments, such as . . . the 10 commandments of fantasy football." Id.  Second, Defendants argue that the "commandments" on the badge were "innocuous rules for employee conduct with no connection to religion." Id. at 7. Lastly, Defendants argue that "[t]here is no deeply held Roman Catholic belief that prohibits or forbids adherents from wearing a name badge that characterizes secular guidelines as 'Our 10 Commandments,'" and therefore wearing the name badge did not "prevent[] Plaintiff from adhering to her Ten Commandments." Id. at 7-9.

Each of these three premises suffer from the same fatal flaw: they measure the religious validity of *Plaintiff*'s objection to wearing the badge based on *Defendants*' "scheme of things." It is irrelevant that Defendants intended the words "Ten Commandments" to be understood in their "vernacular sense" or that the rules listed on the badge did not discuss religion. Not only does Defendants' (non-religious) interpretation of the language have no relevance to Plaintiff's (religious) interpretation, but Defendants' interpretation obscures the actual basis of Plaintiff's objection. As Plaintiff's revised complaint makes clear, her objection was not based on the content of the language per se, but on Defendants' requirement that she wear the language

7

around her neck or on her chest.  This is apparent by Plaintiff's allegation that she did not object to placing the list of rules somewhere in her office.  See 2d. Am. Compl. ¶ 35 ("Plaintiff would have gladly placed the information in a non-visible area in her workspace so that she would see it each day.").  Defendants miss the point, therefore, when they analogize the requirement that *an employee wear a badge* containing language that offends the employee's religious beliefs with *statements by the employer* that do not require employees to personally identify with the statements.  See id. ¶ 39 ("[I]t was offensive to [Plaintiff's] religious beliefs *to hold herself out* as abiding by any such '10 Commandments' other than those laid out as a tenant of her Catholic faith . . . ." (emphasis added)).

Nor does it matter if, as Defendants assert, most adherents to the Roman Catholic faith do not share Plaintiff's objection to wearing the badge.  As the Supreme Court has stated, a person's belief can be religious even if it is not "shared by all of the members of [her] religious sect." Thomas, 450 U.S. at 715-16; accord 29 C.F.R. § 1605.1.  Further, by asking this Court to determine if Plaintiff is misreading the tenets of her Roman Catholic faith, Defendants are asking this Court to be an "arbiter[] of scriptural interpretation."  Thomas, 450 U.S. at 716.  Not only is it inappropriate for a court make a factual determination in a 12(b)(6) motion to dismiss,[9] a scriptural determination is "not within the judicial function and judicial competence."  Id.

Although there are circumstances where courts can find an asserted religious belief a mere "personal preference" unworthy of constitutional or statutory protection, Wisconsin v. Yoder, 406 U.S. 205, 216 (1972), those circumstances are not present here.  Importantly, in each of the cases cited by Defendants, the *plaintiff's own statements* showed that the plaintiff's belief

---

[9] Defendants' assertions about what are and are not "deeply held Roman Catholic beliefs" are factual assertions which, even if relevant, can carry no weight in a Rule 12(b)(6) motion to dismiss.

was not religious under the *plaintiff's own scheme of things*.[10]  Here, by contrast, Defendants urge the Court to find Plaintiff's religious belief invalid based on *Defendants*' conception of religion.  This is a fundamental and dispositive distinction.

Nor is Defendants' position bolstered by the recent decision in Hernandez v. Northside Independent School District, 916 F. Supp. 2d 757 (W.D. Tex. 2013).  In Hernandez, a high school student objected to wearing an identification badge with a radio frequency chip because she deemed the chip to be "the mark of the beast."  916 F. Supp. 2d at 768.  Although the school accommodated the student's concern by allowing her to wear the badge without the chip, the student persisted in refusing to wear the badge because she feared that wearing it would "put a smiley face" on the school's radio chip program.  Id. at 772.  In denying the plaintiffs' request for a preliminary injunction, the court did not question the religious validity of the student's belief that wearing the badge with a radio chip violated her religion.  Id. at 768 n. 60 ("[T]he Court accepts [the student's] subjective religious beliefs about the chip . . . .").  The court denied the injunction, instead, on the basis that the student did not have a *sincerely held* religious objection to wearing the badge without a chip—a conclusion the court reached based on the *student's own statements*.[11]  Id. at 772.  Accordingly, since Defendants here do not question the

---

[10] See Storey v. Burns Int'l Security Servs., 390 F.3d 760, 765 (3d Cir. 2004) (rejecting plaintiff's claim of a religious belief in displaying stickers of Confederate flag because "[b]y his own account, [he] only 'displayed these stickers because he is proud of being a Confederate Southern-American' and 'is interested in sharing his passion for his heritage with others"); Reed v. The Great Lakes Cos., Inc., 330 F.3d 931, 934 (7th Cir. 2003) (holding that the plaintiff failed to establish a religious belief because he "refused to say at his deposition" what his religion is); Prewitt v. Walgreens Co., No. 11-2393, 2011 WL 4364660, at *8 n.15 (E.D. Pa. Sept. 25, 2012) (stating that pharmacist's opposition to giving flu vaccine was a mere "personal preference" because, by pharmacist's own admission, his opposition to administering the vaccine was the result of his friend dying from a flu shot); Hussein v. UPMC Mercy Hosp., No. 09-0547, 2011 WL 13751, at *8 (W.D. Pa. Jan. 4, 2011) (finding Muslim employee's last-minute request for vacation leave to go on a second pilgrimage to be a "personal preference" because the timing of the leave was not based on an external or internal religious command, but on the discounted rate the employee would get by travelling on the requested days).

[11] See id. ("Plaintiff does not contend that she has a 'sincerely held religious belief' that wearing the badge without a chip is still the mark of the beast.  And only with prompting by her counsel did [she] agree that wearing the badge without a chip would mean she has to 'bear false witness' to a program that she disagrees with.  Thus, Plaintiff's objection to wearing a badge without a chip is not grounded in her religious beliefs.").

sincerity of Plaintiff's religious objection to wearing the badge, the Hernandez court's ruling does little to advance Defendants' arguments, at least at this stage in the litigation.

**B.       Plaintiff's Retaliation Claim**

To have a viable retaliation claim, Plaintiff must plausibly allege that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (internal quotation marks omitted). Since Defendants do not contest the latter two elements, the only element in dispute is whether Plaintiff engaged in protected activity when she objected to Defendants' badge requirement.

Defendants' position is that Plaintiff could not have engaged in "protected activity" because the badge had nothing to do with religion. In addition to the problems already identified with this argument, Defendants overlook the fact that Plaintiff is not required to prove the merits of her underlying discrimination claim to prevail on her retaliation claim. Instead, Plaintiff need only show that she "opposed conduct that *a reasonable person could believe* violated Title VII's standard for unlawful discrimination." Id. at 344 (emphasis added). The Third Circuit has stated that oppositional conduct includes "informal protests of discriminatory employment practices, including making complaints to management." Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006). Since Plaintiff alleges to have told management about her religious-based objections to wearing the badge, and since she plausibly alleges that her objections could have been reasonably accommodated, she has met her burden of alleging opposition to conduct that a reasonable person could believe violates Title VII. Accordingly, the Court finds that Plaintiff has plausibly alleged a retaliation claim.

10

## VI. CONCLUSION

For the foregoing reasons, the Court will DENY Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.

An appropriate order follows.

O:\CIVIL 12\12-5453 ambrose v. gabay ent\mtd_second_am_compl.docx